UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>STEVE VAUGHT, President of Alpha Lending, LLC, d/b/a Marigold Credit, and Member-Manager of Alpha Holding Company, LLC,<br><br>Respondent,<br><br>S. CROW COLLATERAL CORPORATION and STANLEY D. CROW,<br><br>Intervenors. | Case No. 1:18-cv-00452-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Respondent Steve Vaught's Motion for Evidentiary Hearing (Dkt. 6) and Intervenors' Motion to Amend and Supplement Opposition to Petition to Enforce IRS Summonses and Motion to Quash (Dkt. 26). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Motion

to Amend and Supplement Opposition and DENIES the Motion for Evidentiary Hearing.

## II. BACKGROUND

The IRS is investigating S. Crow Collateral Corporation ("SCCC") and Stanley D. Crow. In the course of its investigation, it has issued multiple third-party summonses. SCCC and Crow have moved to quash third-party summons in two other cases: 1:17-mc-09828-EJL and 1:17-mc-09829-EJL (collectively "the Pioneer Title Summons Cases").

In the Pioneer Title Summons Cases, SCCC and Crow argued that the IRS's investigation of SCCC and Crow was pretextual. They requested an evidentiary hearing to question IRS agents with regards to whether the investigation was legitimate. The district court found SCCC and Crow were not entitled to an evidentiary hearing because they had not plausibly raised an inference of bad faith; their argument that the IRS's investigation was pretextual was not persuasive. 1:17-mc-09828-EJL Dkt. 26. Subsequently, SCCC and Crow appealed the district court's decision on the grounds that they were entitled to an evidentiary hearing permitting them to cross-examine the IRS agents.

While these events were occurring, Revenue Agent Kate Lopez, now retired, issued two administrative third-party summonses to Steve Vaught. Like the summonses issued in Pioneer Title Summons Cases, both summonses related to the IRS's investigation of SCCC and Crow. On January 19, 2018, Lopez issued the first summons to Vaught as president of Alpha Lending, LLC, directing him to appear before the IRS on March 13, 2018, and to give testimony and produce for examination records and documents of Alpha Lending as described in the summons. On January 24, 2018, she issued the second summons to Vaught as member-manager of Alpha Holding Company, LLC, d/b/a Marigold Credit, directing

him to appear before the IRS on March 13, 2018, and to give testimony and produce for examination records and documents of Marigold Credit as described in the summonses.[1]

On March 9, 2018, Vaught's counsel mailed a letter to Agent Lopez expressing opposition to the summonses, contending that the IRS sought "voluminous and irrelevant records." Dkt. 4-10, at 2. He advised the IRS that "no records will be produced to you on or before March 13, 2018, in response to the summonses." *Id*. After expressing that Vaught "anticipate[d] vigorously contesting compliance with the summonses in their current form," he concluded he was willing to meet with Lopez to make a "good faith effort" to limit the scope of the records to be produced. *Id*.

Vaught neither appeared before the IRS on March 13, 2018, nor produced any testimony or materials as directed by the summonses. The parties communicated with each other over the next several months. They discussed Lopez coming to the Alpha Companies' offices for an interview with Vaught and document review during the week of July 23, 2018. Lopez was ultimately unable to attend such a meeting because she was retiring and advised Vaught that her caseload would be transferred to other agents prior to her retirement in August. The IRS subsequently transitioned Lopez's cases relating to the Alpha Companies Summonses to Revenue Agent Julia Keene. After Lopez retired in August 2018, there is no record of the parties corresponding.

On October 17, 2018, the Government filed its petition to enforce the IRS's Alpha

---

[1] Collectively, Alpha Lending, LLC and Alpha Holding Company, LLC will be referred to as the "Alpha Companies" and the two summonses issued in January 2018 will be referred to as the "Alpha Companies Summonses."

Companies Summonses. On November 26, 2018, Respondent Vaught filed his answer and opposition to the Government's petition. He also filed the pending motion for an evidentiary hearing to cross-examine Keene, as the IRS's declarant to its petition to enforce the summonses, and Lopez, as the summonses' issuing agent. On the same day, SCCC and Crow (collectively, "Intervenors") filed their memorandum of opposition to the Government's petition to enforce the Alpha Companies Summonses. On December 21, 2018, Intervenors requested this litigation be stayed pending the outcome of Intervenors' consolidated appeals in the Pioneer Title Summons Cases.

On February 26, 2019, the Ninth Circuit issued an opinion in an unrelated IRS third-party summons enforcement case. Based on the Ninth Circuit's holding in that case, Intervenors filed the pending motion on April 12, 2019, for leave to amend and supplement their opposition to the petition and motion to quash.

On July 31, 2019, the Government submitted notice of the Ninth Circuit's July 29, 2019 order and memorandum concerning the Pioneer Title Summons Cases. The Ninth Circuit affirmed that an evidentiary hearing was unnecessary in those cases because petitioners had failed to provide specific facts and circumstances that raised a plausible inference that the IRS had improper motives in its investigation of Crow and SCCC.

On September 13, 2019, Intervenors filed a notice of intent to further supplement their opposition to the Government's petition by October 11, 2019, based on documents the IRS has produced to them in the past month. Intervenors requested that the Court refrain from ruling on the Government's petition until Intervenors have an opportunity to seek leave to amend based on the newly produced materials. If and when Intervenors do file

their second motion to supplement their opposition to the Government's petition, the Court will consider the motion on the merits prior to ruling on Government's petition.

### III. DISCUSSION

The Court reviews the two pending motions under separate legal frameworks. The Court will first consider Intervenors' motion to amend and supplement their opposition to the Government's petition to enforce the Alpha Companies Summonses and motion to quash the Government's petition. It will then examine Vaught's motion for an evidentiary hearing.

1. *Motion to Amend and Supplement Opposition to Petition to Enforce IRS's Summonses and Motion to Quash*

Intervenors moved under Federal Rules of Civil Procedure 15(a), (d) and District of Idaho Local Civil Rule 15.1 for leave to amend their opposition to the petition and motion to quash. Dkt. 26. They argue their motion should be granted because of a change in controlling precedent. In its response, the Government does not state whether it opposes Intervenors' motion to intervene but instead advances substantive arguments that, even under the Ninth Circuit's new ruling, the IRS complied with the law in this case. Dkt. 27.

The IRS has authority to issue third-party summonses in the course of its investigations, but those summonses may be quashed under certain circumstances. By statute, the IRS may "examine any books, papers, records, or other data which may be relevant or material" to an inquiry into "the liability of any person for any internal revenue tax." 26 U.S.C. § 7602(a)(1). It may also "summon . . . any . . . person . . . to produce such books, papers, records, or other data . . . as may be relevant or material to such inquiry."

26 U.S.C. § 7602(a)(2). Significantly, special procedures apply when a summons is issued to a third-party. 26 U.S.C. § 7609. The examinee may seek to quash the summons; in turn, such a proceeding affords the IRS the opportunity to seek judicial enforcement of the summons. 26 U.S.C. § 7609(b)(2)(A); see also 26 U.S.C. §§ 7402(b), 7604(b).

When a summons is challenged in district court, it is the Government's burden to make a *prima facie* showing of four elements: (1) the investigation has a legitimate purpose; (2) the information sought may be relevant to that purpose; (3) the IRS does not already possess the requested information; and (4) the proper administrative steps have been followed. *U.S. v. Powell*, 379 U.S. 48, 57–58 (1964). Yet "[t]he burden imposed by *Powell* 'is a slight one, and may be satisfied by a declaration from the investigating agent' addressing each element." *Action Recycling Inc. v. United States*, 721 F.3d 1142, 1145 (9th Cir. 2013) (quoting *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993)). *See also U.S. v. Clarke*, 573 U.S. 248, 251 (2014) (holding the Government "need only demonstrate good faith in issuing the Case summons," which is typically established by filing an affidavit from the investigating agent) (internal quotations omitted). Even so, a taxpayer "may challenge the summons on any appropriate ground." *Powell*, 379 U.S. at 58 (citation omitted). It is the taxpayer's burden to show the IRS is not "honestly pursuing the goals of § 7602 by issuing the summons," and that "burden is a heavy one." *U.S. v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978).

On February 26, 2019, the Ninth Circuit issued its opinion in *J.B. v. United States*, 916 F.3d 1161, 1164 (9th Cir. 2019). This decision was published after the Intervenors had filed their original opposition to the Government's petition to enforce IRS's summonses.

In *J.B.*, the Ninth Circuit considered what administrative steps the IRS is required take when seeking judicial enforcement of a third-party summons. By statute, before the IRS summons a taxpayer's financial records from employers, financial institutions, or other third-parties, the IRS must provide the taxpayer with "reasonable notice in advance." I.R.C. § 7602(c)(1). The Ninth Circuit held that reasonable notice in advance "means notice reasonably calculated, under all the relevant circumstances, to apprise interested parties of the possibility that the IRS may contact third-parties, and that affords interested parties a meaningful opportunity to resolve issues and volunteer information before third-party contacts are made." *J.B.*, 916 F.3d at 1164. Accordingly, district courts are to engage in a fact specific review of the "totality of the circumstances" to determine if the IRS provided taxpayers with reasonable notice in advance. *Id*.

Subsequent to this ruling, Intervenors moved to amend and supplement their opposition to the Government's petition to enforce IRS's summonses pursuant to Federal Rule of Civil Procedure 15(a)(2), (d) and District of Idaho Local Civil Rule 15.1. In their original opposition, Interveners contended that the Government had failed to make the required *prima facie* showing that it had met the four *Powell* elements. Dkt. 7, at 4. Although Intervenors specifically challenged the summonses on the ground that the IRS had issued them for an "illegitimate or improper purpose," they never explicitly alleged that the Government had not provided reasonable advance notice. *Id*. Intervenors now argue that the IRS did not comply with the advance notice requirements under I.R.C. § 7602(c)(1) and that the Ninth Circuit's holding in *J.B.* "constitutes a change in controlling precedent and is . . . grounds for amending [their] pleading." *Id*. at 4.

Rules 15(a) and (d) of the Federal Rules of Civil Procedure provide that a party may amend a "pleading." Fed. R. Civ. P. 15. That term must be interpreted in conjunction with Rule 7(a), which enumerates the pleadings permitted in federal practice as follows: a complaint, an answer to the complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, pursuant to court order, a reply to an answer. Fed. R. Civ. P. 7. Under a literal application of Rule 15, motions and petitions are not "pleadings." Local Rule 15.1 addresses the *form* of a motion to amend a pleading and its supporting documentation; it does not address when a party may amend a pleading. Dist. Idaho Loc. Civ. R. 15.1.

Although Interveners have no right to amend under the cited rules of civil procedure, judicial decisions should be decided on the merits. Accordingly, this Court will permit Intervenors to amend their opposition in light of the Ninth Circuit's clarification of how to interpret I.R.C. § 7602(c).

Intervenors are granted fourteen days to file their amended opposition to the Government's petition to judicially enforce the IRS's Alpha Companies Summonses. Their filing must be accompanied by a version of the amended opposition that shows—through redlining, underlining, strikeouts, or other similarly effective methods—how the amended opposition differs from the original opposition.

2. *Motion for Evidentiary Hearing*

The Court next turns to Vaught's motion for an evidentiary hearing. He alleges that Agent Keene may have made "false statements" in her declaration and that enforcing the summonses would constitute an abuse of the Court's process. Dkt. 6, at 3. He requests the

hearing in order to question IRS agents "about their involvement in issuing these summonses, agent Lopez's agreement allowing Respondent to provide documents and testimony at his offices and her later rescission of that agreement, and other matters related to the *Powell* requirements and abuse of the Court's processes in seeking enforcement of these summonses." *Id*. While Vaught stated that "[t]here is no dispute that evidentiary hearings are the exception in summons enforcement proceedings," he requests one in this case. Dkt. 20, at 2. He primarily contends that he reached an oral agreement with the IRS that Lopez would come to the Alpha Companies' offices sometime during the week of July 23, 2018, to obtain his testimony and select which records she wanted produced to the IRS. Because that meeting did not occur, Vaught argues the IRS waived its right to enforce the Alpha Companies Summonses.

In response, the Government argues that there was "no agreement between Vaught and the IRS that would constitute a waiver by the United States of its right to enforce the summonses." Dkt. 16, at 4. Rather, it contends that the parties never reached a formal agreement with regards to how and when Vaught was to respond to the Alpha Companies Summonses. Thus, enforcement of the summonses would not be an abuse of process. Additionally, the Government notes that Vaught's requested scope of the evidentiary hearing is far too broad.

In *U.S. v. Clarke*, the Supreme Court articulated the showing a taxpayer must make in order to be entitled to an evidentiary hearing when challenging an IRS summons:

> As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked

> allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing.

573 U.S. 248, 254–55 (2014).

Vaught fails to meet his burden under *Clarke* to be entitled to an evidentiary hearing. The circumstances surrounding the IRS's Alpha Companies Summonses do not create a plausible inference that the IRS was acting in bad faith.

Reviewing the facts, Vaught failed to appear or produce documents on March 13, 2018, as required by the Alpha Companies Summonses. Five days prior, Vaught's counsel, Tim Tarter, had mailed a letter to Lopez noting Vaught's opposition to complying with the summonses as issued but offering to meet with her in person to discuss his concerns. On May 17, 2018, the IRS mailed Vaught a letter reiterating that he needed to comply with the summonses. On June 6, 2018, Tarter renewed Vaught's offer via fax to meet with Lopez or anyone else from IRS to resolve his concern over whether the summonses could be narrowed "to meet a legitimate investigative purpose" in "light of the substantive production by another third-party, the IRS's claimed limited investigative purpose, and the broad scope of the documents summonsed from the Alpha entities[.]" Dkt. 4-14, at 4.

During this period, the parties spoke over the phone several times. One of those occasions was on July 9, 2018. After that call, Tarter faxed Lopez a letter containing his summary of their conversation. In his letter, Tarter stated that Vaught had identified 84

large boxes of documents responsive to the IRS's summonses. Dkt. 4-15, at 4. He estimated the boxes contained over 200,000 pages, it would cost the Alpha Companies at least $116,000 to make the records electronically available to the IRS to review, and it would take "no less than 170 hours" to review all of responsive documents before scanning them. *Id*. at 4. Tarter also alleged in the letter that the parties had previously agreed that Lopez would come to Alpha's offices during the week of July 23, 2018, to meet with Vaught and select the summonses records she wanted scanned and electronically produced. *Id*. at 3. Tarter closed his letter with a renewed offer "to make all records (other than cancelled checks) responsive to the IRS summonses available to [the IRS] at [Alpha Companies'] offices as we previously agreed." *Id*. at 4. Lopez never responded to Tarter's letter.

In her declaration, Lopez acknowledges that she received a letter from Tarter dated July 17, 2018, but asserts the letter misstates their conversations. First, Lopez claims that on a previous call on June 29, 2018, she had informed Tarter that she "did not have the capability to review the boxes of documents and select which ones were responsive to the summons," but rather Vaught had the obligation to identify the responsive documents. Dkt. 16-1, ¶ 7. Once he had done so, she was willing to scan the documents he selected. *Id*. She claimed Tarter responded that he would discuss this issue with his client. *Id*. Additionally, on a July 5, 2018 call, she had "emphasized that regardless of our discussions of how responsive documents were to be produced, Mr. Vaught must also be available for an interview." *Id*. at ¶ 8.

Lopez also attests that she informed Tarter on their July 9, 2018 call that the upcoming interview would have to be delayed because she was retiring and Agent Keene,

the agent assisting Lopez and slated to take over the case upon Lopez's upcoming August retirement, could not meet during the discussed time period due to scheduling conflicts. *Id*. at ¶ 10. Lopez also identified the following statement in Tarter's letter as an inaccurate account of their July 9, 2018 discussion: "The letter stated that '[t]he purpose of your visit [to Alpha's office] was to select those records you wanted scanned and produced in electronic format.'" *Id*. at ¶ 11. Lopez asserts that she had informed Tarter she was unable to assist with scanning the records but offered Tarter assistance in the production by being *available* to scan records "if they were already in a format as being responsive to the summonses." *Id*. at ¶¶ 10–11. However, it was Vaught's burden to select the records, as she did not have the capability to search through all 84 boxes to segregate which documents were responsive to the summons. *Id*.

Ultimately, Lopez affirms that the parties never reached a formal—or final—agreement in July 2018 with regards to the interview date or final method of production. *Id*. at ¶¶ 9, 12. This was in part because Tarter had to confirm details with his client and she had to confirm details with Keene. *Id*. at ¶ 9. It was also in part because of Lopez's upcoming retirement which consequently caused their tentatively planned interview to be delayed due to Keene's schedule. *Id*. at ¶ 10.

Both parties agree that "a specific date and time was never set to meet at Vaught's offices" in the week of July 23, 2018. Dkt. 20, at 3. Both parties also agree that after Lopez retired, Keene did not call Tarter to reschedule Vaught's appearance. Instead, the next party communication was on October 17, 2018, when the Government filed its petition to enforce the IRS's Alpha Companies Summonses. Vaught admits that although he has identified 84

boxes of documents responsive to the Alpha Companies Summonses, he has not provided those documents, or any others, to the IRS as directed by the summonses. Vaught also admits he has not provided testimony to the IRS as directed by the summonses.

Vaught now argues that because the parties seriously discussed meeting during the week of July 23, 2018, so that he could provide records and testimony in compliance with the summonses and no such meeting occurred, the IRS "failed to honor its agreement in July 2018 allowing Vaught to voluntarily satisfy his obligations under the summons at issued[.]" Dkt. 6, at 2. However, the facts and circumstances do not raise an inference of improper motive necessary for the Court to hold an evidentiary hearing.

Vaught can point to no written agreement between the parties but instead relies on circumstantial evidence. Critically, Vaught is unable to point to any record of a specific date and time the parties agreed to meet. In addition, by Vaught's own admission, reviewing the records the IRS wanted electronically produced from the 84 boxes in order to select responsive material *prior* to any scanning would take at least 170 hours. Even if Lopez planned on being at Alpha Companies' offices for the entire week of July 23, 2018— which no party has alleged—Lopez would not have had time to review all of the documents. Thus, Vaught's contested assertion that the parties had agreed it was Lopez's burden to review the documents at the Alpha Companies' offices during a single meeting to determine what documents she wanted electronically produced is not plausible.

Furthermore, Vaught never alleges that the IRS communicated to him that it no longer sought his testimony or the requested documents. Instead, the IRS communicated to him that the proposed July 2018 meeting would no longer work with the assigned agent's

schedule due to her retirement. Vaught's allegations he reached an agreement with the IRS that would compromise the Government's ability to enforce the Alpha Companies Summonses is not plausible. Vaught even states "[a] simple follow up call from newly assigned agent Keene to reschedule Vaught's appearance would have eliminated the need for this entire proceeding." Dkt. 20, at 4. In essence, Vaught concedes that he knew the parties had not reached an agreement in July 2018, that the summonses would be satisfied by his offer to meet the week of July 23, 2018, whether or not the meeting actually occurred, Vaught actually testified, or Vaught actually produced responsive documents. Because there was no agreement, the IRS did not waive its right to enforce the summonses.

Fundamentally, Vaught's allegation that there was a July 2018 agreement resolving how the IRS's Alpha Companies Summonses would be handled is not credible. As Vaught's characterizations of the facts and circumstances do not plausibly raise an inference of improper motive on the part of the IRS with respect to the summonses, he is not entitled to an evidentiary hearing in which he can cross-examine the IRS agents. *See Clarke*, 573 U.S. at 248; *see also United States v. Stuckey*, 646 F.2d 1369 (9th Cir. 1981). Vaught's motion for an evidentiary hearing is denied.

## IV. ORDER

The Court HEREBY ORDERS:

1. Intervenors' Motion to Amend and Supplement Opposition to Petition to Enforce IRS Summonses and Motion to Quash (Dkt. 26) is **GRANTED**.

2. Intervenors shall file their amended opposition within 14 days of the date of this Order.

3. Respondent's Motion for Evidentiary Hearing (Dkt. 6) is **DENIED**.

DATED: September 30, 2019

David C. Nye
Chief U.S. District Court Judge