UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br>v.<br><br>STEVE VAUGHT, President of Alpha Lending, LLC, d/b/a Marigold Credit, and Member-Manager of Alpha Holding Company, LLC,<br><br>    Respondent,<br><br>S. CROW COLLATERAL CORPORATION and STANLEY D. CROW,<br><br>    Intervenors. | Case No. 1:18-cv-00452-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.   INTRODUCTION

Pending before the Court are a Petition to Enforce IRS Summonses (Dkt. 1) by the United States of America (the "Government") and a Second Amended and Supplemented Opposition to the Government's Petition to Enforce and Motion to Quash (Dkt. 39) by Intervenors S. Crow Collateral Corporation ("SCCC") and Stanley D. Crow.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the matters without oral argument. Dist. Idaho Loc.

Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court DENIES the Petition to Enforce and GRANTS the Second Amended and Supplemental Opposition to the Government's Petition to Enforce and Motion to Quash.

## II. BACKGROUND

On November 17, 2015, the Internal Revenue Service ("IRS") initiated an examination of Intervenor Stanley D. Crow to determine whether he is subject to penalties under the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 6700, 6707, and 6708.[1] The IRS is investigating Crow's role in transactions involving installment sales plans under 26 U.S.C. § 453.[2] More specifically, the IRS is assessing whether the installment sales transactions promoted by Crow and his company, SCCC, qualify as tax shelters subject to registration and disclosure requirements, as well as whether Crow has made false statements regarding tax benefits associated with such transactions. The investigation requires the IRS to make a determination regarding whether penalty conduct occurred and, if appropriate, to calculate the penalty amount.

On the day it initiated the examination, the IRS sent Crow a general notice entitled

---

[1] Section 6700 imposes a penalty on any person who organizes or participates in the sale of any product, plan, or arrangement, and, in connection therewith, makes a statement that the person knows or has reason to know is false or fraudulent as to any material tax matter, or if the person grossly overstates the value of any property or services as to any material tax matter. 26 U.S.C. § 6700. Section 6707 penalizes the failure to furnish information, and Section 6708 penalizes the failure to maintain a list of advisees, in connection with certain reportable transactions that have the potential for tax avoidance or evasion, such as tax shelters. 26 U.S.C. §§ 6707, 6708.

[2] Section 453 permits sellers of capital assets pursuant to installment agreements to defer income for federal income tax purposes if certain conditions are met. 26 U.S.C. § 453.

"Your Rights as a Taxpayer," also known as a "Publication 1." Dkt. 27-1, ¶ 4. Publication 1 generally informs taxpayers subject to an examination that the IRS may contact third parties during the course of an investigation.[3] *Id.* On December 16, 2015, Internal Revenue Agents had an initial meeting with Crow to discuss the investigation. During the meeting, the Agents notified Crow that the IRS "may contact other persons or entities." *Id.* ¶ 5. The parties dispute whether the IRS ever provided any additional notice of potential third-party contacts.

Over the nearly six years of its investigation of Crow, the IRS has issued multiple third-party summonses, and has made contact with at least sixteen third parties. Dkt. 39, at 12–13. In 2017, Crow and SCCC moved to quash third-party summonses issued to Pioneer Title Company in two cases before District of Idaho Judge Edward J. Lodge, 1:17-mc-09828-EJL-REB and 1:17-mc-09829-EJL-REB (collectively "the Pioneer Title Cases"). In the Pioneer Title Cases, SCCC and Crow argued that the IRS's investigation of Crow was pretextual,[4] and requested an evidentiary hearing to question IRS agents regarding the legitimacy of the investigation. The Pioneer Title court denied SCCC and Crow's request for an evidentiary hearing because they had not plausibly raised an inference of bad faith, and subsequently entered orders enforcing the Pioneer Title summonses. 1:17-mc-09828-

---

[3] A third-party contact is a communication which: (1) is initiated by an IRS employee; (2) is made to a person other than the taxpayer; (3) is made with respect to the determination or collection of the tax liability of such taxpayer; (4) discloses the identity of the taxpayer being investigated; and (5) discloses the association of the IRS employee with the IRS. 26 C.F.R. § 301.7602-2(b).

[4] Crow contended the investigation was pretextual because the IRS was not interested in investigating him, but instead only wanted to obtain the names of the counterparties to SCCC's installment sales transactions in order to audit those taxpayers. *See, e.g.,* Dkt. 29-1, at 2.

EJL-REB, Dkts. 20, 26; 1:17-mc-09829-EJL-REB, Dkts. 18, 24. SCCC and Crow appealed the district court's decision, arguing they were entitled to an evidentiary hearing to cross-examine the IRS agents involved in issuing the summonses to Pioneer Title.

While these events were unfolding, the IRS continued its investigation of Crow, and issued the two summonses that are the subject of this suit. Specifically, the IRS issued a third-party summons to Steve Vaught as president of Alpha Lending LLC on January 19, 2018, as well as a third-party summons to Vaught as member-manager of Alpha Holding Company LLC, d/b/a Marigold Credit on January 24, 2018 (collectively "Vaught Summonses"). Alpha Lending LLC and Alpha Holding Company LLC (the "Alpha Companies") have a business relationship with SCCC, and have served as a lender or escrow agent in SCCC's installment sales transactions. The Vaught Summonses directed Vaught to: (1) appear before the IRS on March 13, 2018; and (2) give testimony and produce for examination records and documents on behalf of the Alpha Companies. Vaught did neither.

Although Vaught and the IRS were in communication after Vaught failed to appear and produce documents, all communications ceased in July of 2018. Dkt. 4-1, ¶ 25. On October 17, 2018, the Government filed the instant Petition to Enforce the Vaught Summonses ("Government's Petition"). Dkt. 1. Vaught filed an answer and opposition to the Government's Petition. Dkt. 4. He also filed a motion for an evidentiary hearing to cross-examine the IRS agent who issued the Vaught Summonses, as well as the IRS agent who signed the declaration in support of the Government's Petition. Dkt. 6. SCCC and Crow (collectively the "Intervenors") were later granted leave to intervene, and also filed

MEMORANDUM DECISION AND ORDER - 4

an Opposition to the Government's Petition and a Motion to Quash the Vaught Summonses. Dkts. 7, 11. On December 21, 2018, the Intervenors requested that the Vaught litigation be stayed pending the outcome of their consolidated appeals of the Pioneer Title Cases.

On February 26, 2019, the Ninth Circuit issued an opinion in an unrelated IRS third-party summons enforcement case, *J.B. v. United States*, 916 F.3d 1161, 1164 (9th Cir. 2019). As a matter of first impression, the *J.B.* court interpreted 26 U.S.C. § 7602, which states the IRS must provide the taxpayer with "reasonable notice in advance" before seeking a taxpayer's financial records from third parties. 26 U.S.C. § 7602(c)(1).[5] The *J.B.* court held: "'reasonable notice in advance' means notice reasonably calculated, under all the relevant circumstances, to apprise interested parties of the possibility that the IRS may contact third parties, and that affords interested parties a meaningful opportunity to resolve issues and volunteer information before third-party contacts are made." 916 F.3d at 1164 (citing *Jones v. Flowers*, 547 U.S. 220, 226 (2006)). Based on the Ninth Circuit's holding in *J.B.*, the Intervenors filed a Motion to Amend and Supplement their Opposition to the Government's Petition and Motion to Quash ("First Motion to Amend"). Dkt. 26.

While the First Motion to Amend was pending, the Government submitted notice of the Ninth Circuit's July 29, 2019 Memorandum in the Pioneer Title Cases. Dkt. 29. The

---

[5] Congress has since amended 26 U.S.C. § 7602(c)(1) to change the notice requirements with respect to contacting third parties. Taxpayer First Act of 2019, Pub. L. 116–25, title I, §1206(b), July 1, 2019, 133 Stat. 990. The changes were made effective August 15, 2019—well after the IRS initiated its examination of Crow in 2015 and issued the Vaught Summonses in 2018. *Id.* ("The amendment made by this section shall apply to notices provided, and contacts of persons made, after the date which is 45 days after the date of the enactment of this Act [July 1, 2019]."

MEMORANDUM DECISION AND ORDER - 5

Ninth Circuit affirmed the district court's holding that an evidentiary hearing was unnecessary in the Pioneer Title Cases because Crow and SCCC failed to identify specific facts and circumstances to raise a plausible inference that the IRS has improper motives in investigating Crow. Dkt. 29-1.

On October 14, 2019, the Intervenors filed a Second Motion to Amend their Opposition to the Government's Petition and Motion to Quash ("Second Motion to Amend") based on, *inter alia*, documents the IRS had recently produced in response to a Freedom of Information Act (FOIA) request Crow served in 2017. Dkt. 33. Although it denied Vaught's request for an evidentiary hearing, this Court ultimately granted the Intervenors' First and Second Motions to Amend, and directed the Intervenors to formally file their second amended opposition to the Government's Petition by December 18, 2019. Dkts. 32, 38.

As the Court ordered, the Intervenors filed a Second Amended and Supplemented Opposition to the Government's Petition to Enforce and Motion to Quash on December 18, 2019. Dkt. 39. Briefing was ripe on January 16, 2020. However, on February 12, 2020, this case was reassigned to Visiting Judge James M. Moody from the Eastern District of Arkansas. Dkt. 44.

On October 5, 2020, Crow filed two miscellaneous cases before this Court, *Crow v. United States* (Case No. 1:20-mc-280-DCN) and *Crow v. United States* (Case No. 1:20-mc-281-DCN) ("Crow Cases") to petition to quash additional third-party summonses the IRS issued in the course of investigating Crow. Crow subsequently filed a Motion to Consolidate the Crow Cases with the instant suit (Dkt. 47), and Judge Moody transferred

this case back to the undersigned Judge on January 11, 2021. Dkt. 48.

The Government later withdrew the summonses that were the subject of the Crow Cases and moved to dismiss those cases because the Court no longer had jurisdiction under the mootness doctrine. 1:20-mc-280-DCN, Dkt. 14; 1:20-mc-281-DCN, Dkt. 14. On May 20, 2021 the Court dismissed the Crow Cases and denied the Intervenors' Motion to Consolidate. Dkt. 53.

Despite this lengthy procedural history, the only remaining issue before the Court is whether the Vaught Summonses should be enforced or quashed. Given the Ninth Circuit's holding in *J.B.*, the Intervenors argue the Vaught Summonses are unenforceable because the IRS did not satisfy the notice requirements of 26 U.S.C. § 7602(c)(1). In the alternative, the Intervenors contend they are entitled to an evidentiary hearing because they have raised a plausible inference that the Vaught Summonses were issued in bad faith in an attempt to maximize third-party contacts to the detriment of Crow's reputation and business interests.

### III.  LEGAL STANDARD

Congress has "authorized and required" the IRS "to make the inquiries, determinations, and assessments of all taxes" the IRC imposes. 26 U.S.C. § 6201(a). In support of that authority, Congress has granted the IRS broad latitude to summon a taxpayer, or an associated third party,[6] to appear before an IRS official and to provide

---

[6] The IRS has authority to summon not only "the person liable for tax," but also "any officer or employee of such person," any person having custody of relevant "books of account," and "any other person the [IRS] may deem proper." 26 U.S.C. § 7602(a)(2).

sworn testimony, or to produce "any books, papers, records, or other data which may be relevant or material" to an inquiry into "the liability of any person for any internal revenue tax." 26 U.S.C. § 7602(a)(1)–(2). This authority extends to investigations of whether a taxpayer is liable for civil penalties, including those assessed under 26 U.S.C. § 6700 for promoting abusive tax shelters. 26 U.S.C. § 7602(b); 26 C.F.R. § 301.7602-1(a).

If a taxpayer does not comply with a summons, the government may bring an enforcement action in federal court and seek a court order requiring compliance. 26 U.S.C. §§ 7402(b), 7604(a)–(b). To obtain such an order, the government must show that: (1) the investigation has a legitimate purpose; (2) the information sought may be relevant to that purpose; (3) the information sought is not already within the IRS's possession; and (4) the proper administrative steps required by the IRC have been followed. *United States v. Powell*, 379 U.S. 48, 57–58 (1964). In order to ensure the enforcement powers of the IRS are not unduly restricted, the government's required showing is a slight one, and is generally met by filing an affidavit attesting to the *Powell* factors from the responsible investigating agent. *United States v. Richey*, 632 F.3d 559, 564 (9th Cir. 2011).

Even so, a taxpayer "may challenge the summons on any appropriate ground." *Powell*, 379 U.S. at 58 (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)).[7] A court may quash a summons if the taxpayer disproves any of the four *Powell* factors. *J.B.*, 916 F.3d at 1166. In addition, a court may quash a summons if the taxpayer shows the summons

---

[7] "[B]oth the parties summoned and those affected by disclosure may appear or intervene before the District Court and challenge the summons[.]" *Reisman*, 375 U.S. at 445 (citations omitted). For convenience, this decision refers only to the "taxpayer."

MEMORANDUM DECISION AND ORDER - 8

was "issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting the good faith of the particular investigation." *Powell*, 379 U.S. at 58.

In *United States v. Clarke*, 573 U.S. 248 (2014), the Supreme Court clarified the showing a taxpayer must make to obtain an evidentiary hearing to determine whether a summons was issued in bad faith. In *Clarke*, after the IRS submitted an affidavit attesting to the *Powell* factors in a summons enforcement action, the taxpayer offered circumstantial evidence that the summons was intended to punish the taxpayer or to evade discovery limitations imposed by the Tax Court in a related case. *Id.* at 251–52.

Before ruling on the merits, the *Clarke* Court acknowledged the importance of the IRS's summons authority, noting "we have rejected rules that would thwart and defeat the Service's appropriate investigatory powers." *Id.* at 254 (cleaned up). The *Clarke* Court further explained: "The purpose of a summons is not to accuse, much less to adjudicate, but only to inquire. And such an investigatory tool, we have recognized, is a crucial backstop in a tax system based on self-reporting." *Id.* (cleaned up). Accordingly, "courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate." *Id.* (quoting *Powell*, 379 U.S. at 56) (alterations in *Clarke*). Thus, "absent contrary evidence, the IRS can satisfy that standard by submitting a simple affidavit from the investigating agent." *Id.* (citing *United States v. Stuart*, 489 U.S. 353, 359–60 (1989)).

With such restraints on judicial review of the IRS's summons authority as context, the *Clarke* Court outlined the showing a taxpayer must make in order to obtain an

evidentiary hearing in a summons enforcement action:

> As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive. That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition for official wrongdoing.

*Id.* at 254–55.

## IV. DISCUSSION

The Intervenors argue the Vaught Summonses must be quashed because the IRS did not comply with its statutory notice obligations prior to contacting third parties. In the alternative, the Intervenors argue the Vaught Summonses are unenforceable because they are a part of a pattern of bad faith third-party contacts.

Accordingly, the Court's task is to first determine whether the IRS followed the administrative requirements of 26 U.S.C. 7602(c)(1) prior to issuing the Vaught Summonses. If the Court finds it did not, the Vaught Summonses should be quashed and there is no need for an evidentiary hearing. *J.B.*, 916 F.3d at 1166, 1175; *Powell*, 379 U.S. at 57–58. However, if the Court finds the IRS provided Crow with reasonable notice of potential third-party contacts before it issued the Vaught Summonses, then the Court must determine whether the Intervenors are entitled to an evidentiary hearing because they have identified "specific facts or circumstances plausibly raising an inference of bad faith."

*Clarke*, 573 U.S. at 254.

### A. The *Powell* Factors

To support enforcement of the Vaught Summonses, the Government filed a declaration of IRS Revenue Agent Julia Keene.[8] Dkt. 1-2. Keene attested to each of the four *Powell* factors. *Id.* ¶¶ 3–4, 9–10, 13–16. In response to the Intervenors' First Motion to Amend, the Government later filed an affidavit by Supervisory Internal Revenue Agent Brent Allred (Dkt. 27-1). Allred's affidavit supplemented the information provided in Keene's affidavit.

The Court finds that the Government has met its burden as to the first three *Powell* requirements. First, the Vaught Summonses were issued for the legitimate purpose of investigating whether Crow is subject to penalties for promoting potentially abusive installment sales transactions. Dkt. 1-2, ¶ 3. The IRS may use its summons authority "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950)).

Second, the relevance requirement is satisfied because the Alpha Companies have served as a lender or escrow agent in SCCC's installment sales program. The Alpha Company records may contain information regarding: (1) the kinds of installment sales that Crow promoted and how they work; (2) how many people have participated in such installment sales; and (3) how much the participants paid to facilitate the installment sales.

---

[8] "Julia Keene" is a pseudonym the agent uses for her official duties as an IRS Revenue Agent. Dkt. 1-2, ¶ 2.

Dkt. 1-1, at 4. Keene attested that the summonsed information may help the IRS determine whether Crow is subject to liability under 26 U.S.C. §§ 6700, 6707, or 6708, and may also indicate how to calculate the penalty amounts, if appropriate. Dkt. 1-2, ¶ 14.

Third, Agent Keene verified that the summonsed information is not already in the possession of the IRS. Dkt. 1-2, ¶ 13. The Intervenors do not contend otherwise. In fact, the Intervenors no longer contest that the IRS has satisfied the first three *Powell* factors, and now challenge only the fourth.[9] In their Second Amended and Supplemented Opposition to the Government's Petition to Enforce and Motion to Quash, the Intervenors maintain the IRS did not follow the administrative requirements of the IRC, and the Vaught Summonses should be quashed, because the IRS purportedly failed to comply with the notice requirement of 26 U.S.C. § 7602(c)(1) before contacting third parties. As explained below, the Court must agree.

1. *Notice under 26 U.S.C. § 7602(c)(1)*

The IRC proscribes the administrative steps the IRS is required to take when issuing a third-party summons. When the IRS contacted Vaught, 26 U.S.C. § 7602(c)(1) provided: "An officer or employee of the [IRS] may not contact any person other than the taxpayer

---

[9] The Intervenors initially challenged the first *Powell* factor, and argued the Vaught Summonses should be quashed because they were purportedly issued for the "illegitimate or improper purpose" of obtaining the names of sellers to SCCC, and thus failed to satisfy the first *Powell* factor. Dkt. 7, at 4. Following the IRS's response to Crow's FOIA request, the Intervenors now concede that the IRS's investigation has at least one legitimate purpose. Dkt. 33, at 3 ("Intervenors' review of the FOIA response reveals that, if Intervenors' request for an evidentiary hearing were granted, the IRS would be able to demonstrate that it has been examining whether Mr. Crow might be liable pursuant to 26 U.S.C. § 6700."). The Ninth Circuit has held that even if some impermissible purposes are sought through a summons, the summons should still be enforced if the IRS is pursing at least one valid purpose. *United States v. Stuckey*, 646 F.2d 1369, 1375 (9th Cir. 1981) ("Even the co-existence of an improper purpose would not prevent enforcement of the summons if the existence of a legitimate purpose was not rebutted by the taxpayer."). Thus, the first *Powell* factor is met.

with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made."

As noted, in *J.B.*, the Ninth Circuit held the phrase "reasonable notice in advance" means "notice reasonably calculated, under all the relevant circumstances, to apprise interested parties of the possibility that the IRS may contact third parties, and that affords interested parties a meaningful opportunity to resolve issues and volunteer information before third-party contacts are made." 916 F.3d at 1164 (citing *Flowers*, 547 U.S. at 226). In so holding, the Ninth Circuit highlighted the purpose of the notice requirement is to protect the taxpayer's reputational interest by giving the taxpayer an "opportunity to resolve issues and volunteer information before the IRS seeks information from third parties, which would be unnecessary if the relevant information is provided by the taxpayer himself." *J.B.*, 916 F.3d at 1168 (citing S. Rep. No. 105-174, at 77 (1988), *reprinted in* 1998-3 C.B. 537, 613 (1988)). "The [Senate Finance] Committee recognized that taxpayer protections needed to be robust because [third party] contacts may have a chilling effect on the taxpayer's business and could damage the taxpayer's reputation in the community." *Id.* at 1170 (cleaned up).

Accordingly, district courts are to engage in a context specific review of the "totality of the circumstances" to determine if the IRS provided taxpayers with reasonable notice prior to issuing third-party summonses. *Id.* at 1172. The *J.B.* court explained: "This standard requires a 'balancing of the interests of the State' in administering an effective auditing system against the 'individual interest' in receiving notice of the potential third-

party contact and an opportunity to respond." *Id.* at 1173 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Intervenors challenge both aspects of the notice requirement detailed in *J.B.* That is, the Intervenors argue the IRS did not provide pre-contact notice and, in the alternative, contend the IRS failed to afford Crow a reasonable meaningful opportunity to resolve issues and volunteer information before third-party contacts were made. Dkt. 39, at 3–4. Because the Court finds the first contention to be dispositive, it does not further address the latter.

    a.  <u>Advance Notice of Third-Party Contacts</u>

It is uncontested that the IRS did not provide Crow with advance notice of its intent to subpoena records from the Alpha Companies. Instead, the Government argues the IRS satisfied § 7602(c)(1) by generally informing Crow that it may contact third parties on "multiple occasions." Dkt. 40, at 2. Specifically, the Government identifies three times the IRS notified Crow that it may contact third parties.

First, the IRS sent Crow a copy of Publication 1 on November 17, 2015. Although the Government contends this notice "specifically informed [Crow] that the IRS might contact third parties in furtherance of the investigation" (Dkt. 40, at 3), the Ninth Circuit rejected the argument that Publication 1 satisfied the pre-notice contact requirement of § 7602(c)(1) in *J.B.*, 916 F.3d at 1172. While the *J.B.* court did not categorically hold Publication 1 can never constitute "reasonable notice in advance," it noted "we are doubtful that Publication 1 alone will ever suffice to provide reasonable notice in advance to the taxpayer, as the statute requires." *Id.* at 1172 n.15. The *J.B.* court further explained: "We

MEMORANDUM DECISION AND ORDER - 14

think it unlikely that the broad and colloquial language in the 'Third-Party Contacts' paragraph of Publication 1, which states that the IRS may 'sometimes talk with other persons,' gives the taxpayer reasonable advance notice that the IRS intends to subpoena, under threat of penalty, third-party documents." *Id.*

Here, the IRS issued the Vaught Summonses in January of 2018, twenty-six months after it sent Crow Publication 1 on November 17, 2015. Dkt. 1-1, ¶¶ 7–8; Dkt. 27-1, ¶ 1. Similarly, in *J.B.*, two years elapsed between the date the IRS sent Publication 1 to the taxpayers and the date the IRS sought records from a third party. 916 F.3d at 1174. As in *J.B*, this Court cannot find the IRS satisfied its "administrative duty" of giving Crow a meaningful opportunity to provide relevant documents involving the Alpha Companies by generally informing Crow, over two years before, that it may "talk with other persons" in the course of its investigation. *J.B.*, 916 F.3d at 1172 n.15; *id.* at 1173 ("We do not think that an agency that actually desired to inform a taxpayer of an impending third-party contact would consider Publication 1 adequate notice in these circumstances."). Moreover, as in *J.B.*, here the IRS's "willingness to wait two years" between initiating its investigation and issuing the Vaught Summonses reflects a "lack of urgency" in the investigation, and illustrates the IRS's interest in obtaining information would not have been compromised by providing Crow with additional notice of potential third-party contacts. *Id.* at 1174.

Next, the Government suggests Internal Revenue Agents Blake London and Brent Allred personally met with Crow on December 16, 2015, "and again notified him of possible third party contacts." Dkt. 40, at 3 (citing Allred Affidavit, Dkt. 27-1, at ¶ 5). Neither the Government's brief, nor Allred's affidavit, offer *any* details regarding what

MEMORANDUM DECISION AND ORDER - 15

London and Allred said about potential third-party contacts on December 16, 2015. As the Court previously noted when granting the Intervenors' Second Motion to Amend, the Government does not provide any specific information regarding how the IRS purportedly notified Crow of potential third-party contacts on December 16, 2015. Dkt. 38, at 6. For instance, what did London or Allred say about third-party contacts on this date? Did they reference any specific third parties or types of businesses they may contact if Crow did not provide information himself? Did they give any hint that Crow should produce documents involving the escrow companies or lenders that SCCC used in its installment sales transactions? Despite the Court's invitation to provide additional information regarding the specific third-party notice the IRS gave Crow, the Government has not offered any evidence that was not already before the Court when it granted the Intervenors' Second Motion to Amend. *Id.*; *see also* Dkt. 40.

Finally, the Government maintains "possible third party contacts were again specifically discussed by the IRS with Crow" on April 25, 2017. Dkt. 40, at 3. Yet, as the Intervenors have previously highlighted, the April 25, 2017 conversation occurred after the Intervenors complained in a letter, dated April 24, 2017, that the IRS had not provided advance notice before initiating third-party contacts. Dkt. 26-3. In response to the Intervenors' letter, London and Allred contacted the Intervenors' counsel by phone on April 25, 2017, and stated they had issued Publication 1 in lieu of providing more specific notice.[10] Dkts. 28, at 4–5; 28-2; 28-3. Thus, the Government cites a conversation in which

---

[10] Crow was not on the April 25, 2017 phone call. Dkt. 28-1, ¶ 7.

the IRS refused to provide notice other than Publication 1 as an example of the IRS providing reasonable advance notice. Under such circumstances, the Court rejects the Government's claim that the IRS provided Crow with notice of third-party contacts during the April 25, 2017 phone call.

In short, the only advance notice of third-party contacts the IRS gave Crow was through Publication 1 and the December 16, 2015 meeting. Although the Government generally asserts that such contacts satisfied § 7602(c)(1), it has again failed to provide any specific information to show such contacts provided "notice, reasonably calculated, under all relevant circumstances, to apprise [Crow] of the possibility that the IRS may contact third parties[.]" *J.B.*, 916 F.3d at 1173. While the IRS is not required to provide a taxpayer with a "separate notice before each third-party contact or advance notice of specific documents that will be requested," the IRS still must provide taxpayers with sufficient notice to allow them "to respond with the relevant information themselves so as to maintain their privacy and avoid the potential embarrassment of IRS contact with third parties, such as their employers." *J.B.*, 916 F.3d at 1172. The Government has not identified any information to suggest the general notice in Publication 1 and the meeting on December 16, 2015, allowed the Intervenors this opportunity.

Further, as the Intervenors note, the *J.B.* court cited several examples of actions the IRS could have also taken in this case in order to provide Crow with adequate notice of potential third-party contacts. For instance, a reasonable step would have been for the IRS to renew its request for documents in 2018, and to advise Crow that, if documents were not provided, it would begin reaching out to third parties. *Id.* at 1174. Because, as in *J.B.*, here

more than two years elapsed between the dates the IRS contends it provided notice of third-party contacts in 2015, and the issuance of the Vaught Summonses in 2018, it is reasonable to expect the IRS could have "renew[ed] its request for documents and to remind [Crow and SCCC] that if they did not comply, the IRS would begin contacting third parties." *Id.*

Another reasonable step would have been to issue a more tailored letter or request for documents to indicate that the IRS would begin contacting third parties if Crow did not comply. *Id.* Crow responded to the IRS's Information Document Request on August 5, 2016, and to his own IRS summons ("Crow Summons") on June 8, 2017. Dkt. 7-2, ¶ 30; Dkt. 7-22, ¶ 11. In addition, on June 8, 2017, Crow also submitted transaction documents to the IRS and requested that the examination team submit the transactions to its National Office for a determination of the proper treatment. Dkt. 7-2, ¶¶ 30–31; Dkt. 39, at 11. The IRS never responded to Crow's submissions, and has not had any substantive contacts with Crow since April of 2017. Dkt. 39, at 6. Nevertheless, the IRS issued the Vaught Summonses in January of 2018. If the IRS was dissatisfied with the documents Crow had already produced, it could have requested additional documents in the nine months between its last contact with Crow in 2017, and its decision to subpoena records from the Alpha Companies in 2018.

Finally, information Crow obtained through his FOIA request suggests the IRS intentionally did not provide reasonable advance notice that it may contact third parties because the IRS was under the mistaken impression that SCCC's counterparties to the installment sales transactions—such as the Alpha Companies—were not third parties as defined under 26 C.F.R. § 301.7602-2. Dkt. 39, at 9. For instance, London's "Case Activity

Record"[11] states London told Crow's attorney it was the IRS's position that SCCC's counterparties were not "third-party contacts." Dkt. 33-4, Ex. A, at 2 (4/21/16 entry) ("I advised [Crow's attorney] that we do not consider Crow's 'counterparties' as third party contacts[.]"). That the IRS appears to have believed it was relieved of its statutory notice obligations with respect to SCCC's counterparties further suggests the IRS did *not* provide Crow reasonable notice prior to contacting the Alpha Companies through Vaught.

Under the totality of the circumstances in this case, the Court cannot find either the general notice provided in Publication 1, or in an unidentified statement on December 16, 2015, provided Crow with reasonable advance notice that the IRS may contact third parties in the course of its investigation. Because the IRS failed to satisfy the pre-contact notice requirement of § 7602(c)(1), the Government cannot meet its burden of showing it complied with the administrative steps required under the IRC prior to issuing the Vaught Summonses—the fourth *Powell* factor. As such, the Motion to Quash is granted.

## V. ORDER

Now, therefore, IT IS HEREBY ORDERED:

1. The Government's Petition to Enforce (Dkt. 1) is **DENIED**;

2. The Intervenors' Second Amended and Supplemented Opposition to Petition to Enforce and Motion to Quash the Vaught Summonses (Dkt. 39) is

---

[11] A case activity record is a contemporaneous log of activity maintained by the IRS in the course of an audit. *Id.* ¶ 15.

    **GRANTED**[12];

3. **This case is closed**.

DATED: August 16, 2021

David C. Nye  
Chief U.S. District Court Judge

---

[12] Since the Vaught Summonses are quashed because the IRS did not satisfy the fourth *Powell* factor, the Court makes no finding with respect to the Intervenors' alternative arguments that the IRS has not afforded Crow an opportunity to resolve issues or that the IRS has pursued this investigation in bad faith.